Andre M. BUCKLES, Plaintiff–Appellant.

v.

COLUMBUS MUNICIPAL AIRPORT AUTHORITY, et al., Defendant–Appellee.

No. 02–3286.

United States Court of Appeals, Sixth Circuit.

Feb. 23, 2004.

Eric M. Schooley, Martin, Browne, Hull & Harper, London, OH, for Plaintiff–Appellant.

John R. Gall, Philomena M. Dane, Pamela H. Thurston, Paul A. Wolfla, Squire, Sanders & Dempsey, Columbus, OH, for Defendant–Appellee.

Before BOGGS, Chief Judge; GIBBONS, Circuit Judge; and GWIN, District Judge.*

PER CURIAM.

Plaintiff–Appellant Andre M. Buckles appeals from the district court's dismissal of his Takings Clause and Due Process Clause claims for failure to state a claim. Because we find that the district court lacked subject-matter jurisdiction as to the taking claim, and because the due process claim is subsumed by the taking claim, we partially affirm the order of the district court but remand, as to the taking claim only, for dismissal without prejudice.

The Columbus Municipal Airport Authority (the "CMAA") is the Ohio political subdivision charged with developing the municipal airport. Buckles is the owner of a 122–acre tract of land ("Tract I") near the airport, and the former owner of a smaller, nearby tract ("Tract II"). Buckles alleges that the CMAA's systematic conduct over the fifteen years preceding the filing of this action has cumulatively deprived him of all economically viable use of Tract I.

## I. *Facts As Alleged*

Since 1985, the CMAA has listed Tract I in its Master Plan, and in its Airport Improvement Plan on file with the Federal Aviation Agency, as property it intends to acquire. These plans are relied upon by the public. The CMAA communicated with prospective purchasers of Tracts I and II in order to discourage purchase. In particular, in 1995, the CMAA maliciously provided Discover Card Co., a prospective purchaser of Tract II, with false information indicating that Tract II was a poor development prospect. Buckles did eventually develop Tract II, which he no longer owns.

In 1997, the CMAA finally began the acquisition process for Tract I by hiring appraisers. But, Buckles alleges, the CMAA knowingly provided the appraisers with false data, so that the appraisers vastly underestimated the value of Tract I. Based on their appraisal, the CMAA offered Buckles $3.8 million for Tract I, which he refused. In October 1998, the CMAA instituted an appropriation action in Ohio state court. The state court jury found that the value of the land was $13 million.

The CMAA immediately abandoned its appropriation, as authorized by Ohio Rev. Code § 163.21, which allows abandonment of appropriation proceedings before entry

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

of judgment, even after a verdict, so long as the plaintiff has not already taken the property at issue. The CMAA later announced publicly that it still intends to acquire Tract I.

Buckles filed this action in federal district court in August 2000, claiming that the CMAA's conduct was part of an ongoing effort by the CMAA to take Tract I on the cheap, and which had the effect of depriving him indefinitely of all reasonably economically viable use of Tract I. Therefore, Buckles claims, the CMAA has effectively taken his land, and has also violated his substantive and procedural due process rights. The district court dismissed all his claims, and Buckles appeals as to the taking and substantive due process claims.

## II. *Standard of Review*

In reviewing a dismissal for failure to state a claim, we presume that the facts set forth in Buckles's complaint are true, and we construe his allegations in the most favorable light. *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). We may affirm dismissal only if no possible facts could sustain Buckles's claims. *Ibid.* But we need not accept Buckles's unsupported inferences or legal conclusions as true, and he must allege facts that could constitute the material elements of his claim. *LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1103–04 (6th Cir.1995).

## III. *Buckles's Taking Claim is Not Ripe*

█ In the district court, the CMAA urged that Buckles's taking claim was not ripe. The district court did not resolve this issue inasmuch as the complaint failed on many other grounds, and the CMAA has not raised the issue again on appeal. But a district court may not rule on the merits if it has no power to hear the case, and this court may raise the issue of subject-matter jurisdiction *sua sponte. Bige-*

*low v. Mich. Dep't of Natural Resources,* 970 F.2d 154, 157 (6th Cir.1992).

The Takings Clause of the Fifth Amendment does not prohibit the public taking of private property, but only taking "without just compensation." U.S. Const., amend. V. Therefore, the Supreme Court has held that a taking claim is not ripe for judicial review until the state has refused to pay for the property it took. *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Furthermore, the state need not pay in advance; if the state has made available some "reasonable, certain and adequate provision for obtaining compensation," then the claim is not ripe until the claimant has attempted to use this "adequate procedure" and has been rebuffed. *Id.* at 194 (internal quotation marks omitted) (quoting *Blanchette v. Connecticut Gen. Ins. Corps.,* 419 U.S. 102, 124–25, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)).

This Circuit has twice examined the question of whether Ohio has made such adequate provision, with apparently contradictory results. In *Silver v. Franklin Township,* 966 F.2d 1031, 1035 (6th Cir. 1992), we found that when a zoning regulation results in a taking, the plaintiff can seek mandamus in Ohio state court so as to compel the responsible officials to institute appropriation proceedings, and we held that a federal taking claim is not ripe until afterwards. But in *Kruse v. Village of Chagrin Falls,* 74 F.3d 694, 700 (6th Cir. 1996), we held that Ohio mandamus was by definition not an adequate provision for obtaining just compensation following a physical taking, because mandamus is available only when there is no adequate remedy at law or equity.

*Kruse* did not discuss *Silver,* but it did distinguish regulatory from physical tak-

ings in arriving at its holding, and this distinction reconciles the two cases:

> In regulatory cases, where the government has fulfilled its obligation to provide notice to the property owner, it may be fair to place the burden of making the next move on the landowner. It may make sense to require landowners to pursue relief through administrative appeals and the mandatory injunction process when the landowners know in advance that the government is planning action that threatens their ownership of their property ... since there are generally numerous opportunities available to landowners to be heard and to attempt to prevent a proposed zoning ordinance from taking effect, or to reach a compromise with the authorities that permits some alternative use of the land.

*Ibid.* In contrast, where the landowner simply one day finds his land physically invaded and his title transferred against his will, and yet the government refuses to pay up despite explicit requests, he need not go through Dickensian formalities to confirm the government's obvious intentions. *Id.* at 701.

After *Kruse*, the Ohio Supreme Court repeatedly confirmed that "[m]andamus is the appropriate action to compel public authorities to institute proceedings where an involuntary taking of private property is alleged." *State ex rel. Elsass v. Shelby Cty. Bd. of Comm'rs.*, 92 Ohio St.3d 529, 751 N.E.2d 1032, 1037 (2001); *see State ex rel. Sekermestrovich v. City of Akron*, 90 Ohio St.3d 536, 740 N.E.2d 252 (2001). Although mandamus is formally an extraordinary remedy, mandamus actions for this purpose have become routine in Ohio.

Buckles does not allege a typical regulatory taking. But, like the holder of the hypothetical unripe claim discussed in the quotation from *Kruse, supra,* Buckles had ample opportunity before the alleged taking was complete to try to reach an accommodation, and it is fair to require him to proceed through the state courts before he may claim that the state has actively denied him compensation. In a sense, of course, the CMAA refused to pay compensation when it abandoned its appropriation proceeding against Tract I. But this abandonment was itself an integral part of the CMAA's alleged taking: Buckles alleges that by bringing and then abandoning the appropriation action in bad faith, the CMAA drove away buyers and decreased Tract I's market value. Complaint, ¶¶ 28, 33, 34; Buckles App. Br., 28. Under Buckles's own theory of the case, there was no taking for which he could expect compensation until after that bad-faith abandonment.

Buckles has not yet used state process to seek just compensation for the taking that he alleges occurred. Therefore, Buckles's taking claim is unripe and this court has no jurisdiction over it as yet.[1] For the same reason, however, dismissal with prejudice is inappropriate.

---

1. It may seem paradoxical and perhaps even unfair that as soon as a Takings Clause claim is ripe, further action is issue-precluded by the very state proceeding necessary for ripeness. *See* Michael Berger, *Supreme Bait & Switch: The Ripeness Ruse in Regulatory Takings*, 3 Wash. U.J. L & Pol. 99, 102 (2000). Although frustrating to a litigant who seeks a federal forum, this result does seem to be mandated by *Williamson County. Williamson County* may not completely bar takings claims from the lower federal courts, however: a state court's denial of just compensation for an already-accomplished taking would present a ripe claim. And there would be no claim preclusion, because the Takings Clause claim would not have been ripe at the time of the state court proceeding. Thus, had the CMAA completed its taking before it denied Buckles compensation at the appropriation proceeding, his claim might have been ripe. But since, by the same token, he would have then faced a formidable limitations period obstacle, he may count himself well off.

## V. The Substantive Due Process Claim is Subsumed by the Taking Claim.

Buckles's substantive due process claim fails because, where the Constitution specifically provides a remedy, as for the taking of real estate, a substantive due process claim that merely restates the more specific claim will not lie. *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir.2000)(*citing Armendariz v. Penman*, 75 F.3d 1311, 1323–27 (9th Cir.1996) (en banc)).

## VI. Conclusion

For the foregoing reasons, we AFFIRM the order of the district court as to the substantive due process claim, and remand the Takings Clause claim for dismissal without prejudice.